UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

UNITED STATES OF AMERICA,

    Plaintiff,

v.

Floyd Robert Desjarlais,

    Defendant.

Case No. 20-cr-40 (MJD/LIB)

**ORDER AND
REPORT AND RECOMMENDATION**

This matter comes before the undersigned United States Magistrate Judge pursuant to a general assignment, made in accordance with the provisions of Title 28 U.S.C. § 636 and Local Rule 72.1, upon Defendant Floyd Robert Desjarlais' ("Defendant") Motion to Suppress Search and Seizure, [Docket No. 28], and his Motion to Suppress Statements. [Docket No. 29]. The Court held a Motions Hearing on July 6, 2020, regarding the parties' pretrial motions.[1]

At the Motions Hearing, the parties requested, and were granted, the opportunity to submit supplemental briefing. Upon the completion of that briefing, Defendant's Motion to Suppress Search and Seizure, [Docket No. 28], and his Motion to Suppress Statements, [Docket No. 29], were taken under advisement.

For reasons discussed herein, the Court recommends that Defendant's Motion to Suppress Search and Seizure, [Docket No. 28], be **DENIED**.[2]

---

[1] The Court addressed the parties' pretrial motions for discovery and production of evidence by separate Order. [Docket No. 39].

[2] In his Memorandum, [Docket No. 44], Defendant withdrew his Motion to Suppress Statements. [Docket No. 29]. Defendant asserted that the issue of statements was "better addressed to the District Court" based on the issue of relevance pursuant to Federal Rule of Evidence 403. (Def.'s Mem., [Docket No. 44], at 9). Defendant noted that the "questions put to [him] concerning the dog bite and its damage to his skin did not elicit an incriminating response, and" his "statement, 'you can suck a dick' was not an answer to a specific question . . . ." (Id.). Based on these assertions, Defendant has abandoned or withdrawn his Motion to Suppress Statements. [Docket No. 29]. Therefore, Defendant's Motion to Suppress Statements, [Docket No. 29], will be termed.

I.     **Background and Statement of Facts**

    A. **Background**

Defendant is charged with one (1) count of being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(e)(1). (Indictment [Docket No. 13]).

    B. **Facts**[3]

The record presently before the Court indicates that in the early morning hours of July 1, 2019, Leech Lake Tribal Police Officer John Rodgers (hereinafter "Officer Rodgers") received information from dispatch that a reporting caller[4] had heard gunfire at a residence in the area of "Porcupine," which is a term colloquially used to refer to the area of the Leech Lake Reservation encompassing the area near Porcupine Lane. (July 6, 2020, Motions Hearing, Digital Record at 9:35–9:38 a.m.). Upon receiving the information of reported gunfire, Officer Rodgers immediately proceeded in his patrol vehicle to the "Porcupine" area. (Id.). While Officer Rodgers proceeded to the "Porcupine" area, the reporting party stayed on the phone with the dispatcher to report the ongoing situation. (Id.).

Upon arriving at the "Porcupine" area, Officer Rodgers turned onto Porcupine Lane.[5] As Officer Rodgers turned onto Porcupine Lane, he received additional information from dispatch that the "parties in the area of the gunfire had entered a [dark colored truck] and that vehicle was leaving the area." (Id.).

When Officer Rodgers began driving on Porcupine Lane, he observed the headlights of a single vehicle which was driving towards him. At the July 6, 2020, Motions Hearing, Officer

---

[3] The facts contained in this section are derived from the testimony of Leech Lake Tribal Police Officer John Rodgers and Beltrami County Sheriff's Deputy Kyle Nohre at the July 6, 2020, Motions Hearing, as well as, the Government's exhibit presented in the present case.
[4] The reporting party was the neighbor of the residence where the gunfire was reported. The reporting caller remained on the phone with the dispatcher during the time in question. (Id.).
[5] Porcupine Lane is a dead end street. (Id.).

Rodgers testified that this was the only vehicle he observed on the road at the time. (Id.). Officer Rodgers testified that Officer Rodgers was able to turn around his patrol vehicle, position his patrol vehicle behind the subject vehicle, and activate his patrol lights to initiate a stop of the vehicle. (July 6, 2020, Motions Hearing, Digital Record at 9:37–9:40 a.m.). Upon initiation of the patrol lights by Officer Rodgers, the subject vehicle slowed but "continued to roll forward slowly" for several yards. (Id.). The vehicle then "abruptly" stopped, and the male driver, later identified as Defendant, ran from the vehicle into the nearby trees. (Id.).

Officer Rodgers then stopped his patrol vehicle, attempted to alert the other responding officers who were in route to the scene of the situation via his radio, exited his patrol vehicle, observed two occupants remaining in the subject vehicle, and began to approach the subject vehicle with his "weapon drawn in a cautious manner." (Id.). When he arrived at the subject vehicle, a Chevy Avalanche, Officer Rodgers briefly spoke to the passenger in the rear of the vehicle, and Officer Rodgers observed "a bolt-action, hunting style rifle with a [sic] bolt action removed from it" on the floor of the rear passenger compartment of the Chevy Avalanche. (Id.).

Officer Rodgers then placed the rear passenger in handcuffs, and Officer Rodgers sat him near the rear of the Chevy Avalanche. (Id.). This male passenger told Officer Rodgers that he was not "supposed to be around guns." (July 6, 2020, Motions Hearing, Digital Record at 9:44–9:47 a.m.). Officer Rodgers searched the male passenger's person, and he discovered the "bolt" that had been removed from the rifle located near the male passenger's feet. Officer Rodgers also discovered "spent ammunition" matching the rifle's caliber on the male passenger's person. (July 6, 2020, Motions Hearing, Digital Record at 9:37–9:47 a.m.).

Officer Rodgers placed the female, front passenger in his patrol vehicle. While placing her into his patrol vehicle, he inquired as to the identity of the driver who fled the subject

vehicle, and the female passenger identified the driver as the Defendant, Floyd Desjarlais. (Id.). Officer Rodgers provided Defendant's identity to dispatch. (Id.). Dispatch informed Officer Rodgers that Defendant had "several warrants and would have been wanted on those warrants." (July 6, 2020, Motions Hearing, Digital Record at 9:53–9:54 a.m.).

Officer Rodgers returned to the Chevy Avalanche. (July 6, 2020, Motions Hearing, Digital Record at 9:47–9:51 a.m.). On the "console" of the Chevy Avalanche, in the area between the two front seats, Officer Rodgers observed a Ruger pistol. (Id.). Officer Rodgers seized the pistol, and he discovered there were "rounds in the magazine." (Id.). Officer Rodgers also observed a "belt and holster" in the driver's seat which "appeared as though it had been possibly removed from someone sitting in the" the driver's seat. (Id.).

The record now before the Court also indicates that after the Chevy Avalanche had been stopped, Beltrami County Sheriff's Deputy Kyle Nohre (hereinafter "Deputy Nohre) responded to the scene with his K-9 partner, Mac. (July 6, 2020, Motions Hearing, Digital Record at 10:02–10:08 a.m.). Upon arriving at the scene, Deputy Nohre was informed that Defendant had fled the vehicle, and that Defendant had outstanding warrants for his arrest. (Id.). Deputy Nohre then began prepping Mac to track Defendant's location. (Id.). In preparation to track Defendant, Mac was placed in a harness and on a leash, which was held by Deputy Nohre. (Id.).

Deputy Nohre and Mac then began tracking Defendant into the woods. (Id.). After tracking Defendant for approximately five to ten minutes, Mac located and "apprehended" Defendant by biting his thigh. (Id.). After Defendant was subsequently placed into handcuffs, Deputy Nohre took pictures of the bite mark, and he asked Defendant if he needed medical attention. (Id.). Deputy Nohre described Defendant's conduct during the interaction as "not

4

cooperative," and he further noted that during the interaction, Defendant told Deputy Nohre he "could suck a dick." (Id.). Defendant was then taken into custody.

Thereafter, on January 8, 2020, Leech Lake Tribal Police Officer Josh Groth (hereinafter "Officer Groth") filed a state court application for a search warrant to authorize law enforcement to take a buccal swap from Defendant's mouth for the purposes of procuring a DNA sample. (Gov't's Ex. 1).[6] Officer Groth's affidavit in support of that application was based in large part on the facts discussed above in relation to the July 1, 2019, stop of the Chevy Avalanche. (See, Id.). The Honorable Annie P. Claesson-Huseby, District Court Judge for the State of Minnesota, Ninth Judicial District, County of Beltrami, determined that probable cause existed to support the issuance of the January 8, 2020, search warrant. (See, Id.). Thereafter, law enforcement secured the DNA buccal swab from Defendant. (See, Id.).

## II.     Defendant's Motion to Suppress Search and Seizure. [Docket No. 28].

Defendant moves the Court for an order suppressing any evidence obtained as a result of the July 1, 2019, stop of the Chevy Avalanche, as well as, any evidence obtained as a result of the execution of the January 8, 2020, search warrant. (See, Def.'s Mot. to Suppress Search and Seizure [Docket No. 28]). Regarding the July 1, 2019, stop of the Chevy Avalanche, Defendant argues that Officer Rodgers lacked "reasonable suspicion or probable cause" to justify stopping the vehicle. (Def.'s Mem., [Docket No. 44], at 4–9). Defendant also argues that Officer Rodgers lacked any proper justification for seizing the Ruger pistol from the console of the Chevy Avalanche. (Id.). Regarding the January 8, 2020, search warrant, Defendant's sole argument is based on the fruit of the poisonous tree doctrine. (See, Id.).

---

[6] Government's Exhibit 1 is the warrant application, supporting affidavit, and warrant to take a buccal swab from Defendant's mouth for a DNA sample. At the Motions Hearing, the Government, without objection, offered the warrant application, supporting affidavit, warrant, and warrant return into evidence as Government's Exhibit 1. (July 6, 2020, Motions Hearing, Digital Recording at 10:14–10:16 a m.).

5

### A. Standard of Review

The Fourth Amendment guarantees the "right of people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. Amend. IV. "[S]earches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." United States v. Davis, 569 F.3d 813, 816 (8th Cir. 2009) (citing Katz v. United States, 389 U.S. 347, 357 (1967)).

### B. July 1, 2019, Stop of the Chevy Avalanche

It is well-established that law enforcement officers may make an investigatory stop of a vehicle if they have a reasonable and articulable suspicion of criminal activity. See, e.g., United States v. Tamayo-Baez, 820 F.3d 308, 312 (8th Cir. 2016); United States v. Hightower, 716 F.3d 1117, 1119 (8th Cir. 2013); United States v. Bustos–Torres, 396 F.3d 935, 942 (8th Cir. 2005). This type of investigatory stop is commonly referred to as a Terry stop. See, Hightower, 716 F.3d at 1119 (citing Terry v. Ohio, 392 U.S. 1 (1968)).

"Reasonable suspicion exists when an 'officer is aware of particularized, objective facts which, taken together with rational inferences from the facts, reasonably warrant suspicion that a crime has been committed.'" Tamayo-Baez, 820 F.3d at 312 (quoting United States v. Givens, 763 F.3d 987, 989 (8th Cir. 2014)); United States v. Hughes, 517 F.3d 1013, 1016 (8th Cir. 2008). The officer "must be able to articulate something more than an inchoate and unparticularized suspicion or hunch." United States v. Sokolow, 490 U.S. 1, 7 (1989) (internal quotations marks omitted). "While reasonable suspicion must be more than an inchoate hunch, the Fourth Amendment only requires that police articulate some minimal, objective justification for an investigatory stop." Tamayo-Baez, 820 F.3d at 312. "Although a mere hunch does not

6

create reasonable suspicion, the level of suspicion the standard requires is considerably less than proof of wrongdoing by a preponderance of the evidence and obviously less than is necessary for probable cause." Navarette v. California, 134 S. Ct. 1683, 1687 (2014).

The inquiry into whether reasonable suspicion exists considers whether "the facts available to the officer at the moment of the seizure . . . warrant a man of reasonable caution in the belief that the action taken was appropriate." Terry, 392 U.S. at 21–22. It is an objective standard based on the information known to the officers at the time of the seizure. United States v. Hamilton, 591 F.3d 1017, 1022 (8th Cir. 2010). A reviewing court utilizes a totality of the circumstances analysis to determine whether reasonable suspicion exists. Hughes, 517 F.3d at 1016. "Situational factors including the 'time of day or night' and the 'location of the suspect parties' may support the reasonableness of an officer's decision to conduct a stop." United States v. Roberts, 787 F.3d 1204, 1209 (8th Cir. 2015) (quoting United States v. Robinson, 670 F.3d 874, 876 (8th Cir. 2012)).

Defendant argues that Officer Rodgers lacked reasonable articulable suspicion to stop the Chevy Avalanche because Officer Rodgers did not observe the Chevy Avalanche commit any traffic violations. (Def.'s Mem., [Docket No. 44], at 5). However, the observance of a traffic violation is not the only basis upon which law enforcement officers can form the reasonable articulable suspicion necessary to justify an investigatory stop of a vehicle. The proper inquiry is whether the totality of the circumstances known to the officers at the time created a reasonable and articulable suspicion of criminal activity. "[B]oth innocent and criminal acts can create reasonable suspicion." United States v. Juvenile TK, 134 F.3d 899 (8th Cir. 1998) (citing United States v. Sokolow, 490 U.S. 1, 9 (1989); United States v. Condelee, 915 F.2d 1206, 1209 (8th Cir. 1990)).

7

In the present case, the Court finds that the totality of the circumstances on the record now before the Court demonstrates that Officer Rodgers had the necessary reasonable articulable suspicion to justify the initiation of an investigator traffic stop of the Chevy Avalanche on July 1, 2019, while on Porcupine Lane.

At the time Officer Rodgers turned onto Porcupine Lane, he knew that gunfire was still actively being reported in that immediate area, that the persons reported to be in the immediate vicinity of the initiation of the gunfire had gotten into a vehicle to leave the area, that the road on which Officer Rodgers was entering was the only avenue to exit the immediate area, and that the vehicle Officer Rodgers observed driving towards him was the only vehicle in the area. These objective facts and the reasonable inferences drawn thereon represent reasonable articulable suspicion sufficient to justify the July 1, 2019, investigatory stop of the Chevy Avalanche by Officer Rodgers. Courts, including the Eighth Circuit Court of Appeals, have repeatedly held that the close temporal and physical proximity of a vehicle to the area a crime has just occurred can justify law enforcement officers investigatory stop of a vehicle when law enforcement has information which ties the vehicle to the commission of criminal activity in some way. See, e.g., United States v. Roberts, 787 F.3d 1204, 1209 (8th Cir. 2015); United States v. Juvenile TK, 134 F.3d 899 (8th Cir. 1998).

The Court finds United States v. Juvenile TK, 134 F.3d 899 (8th Cir. 1998), informative in consideration of the present Motion. In Juvenile TK, tribal police received a call in the early morning hours informing the tribal police that a man had broken a window in Dragswolf Village, and that he had gotten into a gray car and had a gun. Id. at 900. This information was relayed to law enforcement through dispatch. Id. While officers were investigating by driving around Dragswolf Village, the officers received another report from dispatch that a male at a nearby gas

8

station had brandished a weapon, stolen cigarettes, and gotten into a gray vehicle. Id. at 900–01. The officers did not receive any other information. Id. While the officers were proceeding to the gas station, they saw a gray car make a U-turn in a "parking lot about one and one-half to two blocks from the" gas station where the conduct had been reported. Id. at 901. The officers followed the gray car, and the patrol vehicle activated its "red lights." Id. When the patrol car activated its lights, the gray car made a quick left turn, and it stopped. Id.

The defendant in Juvenile TK argued that the stop of the gray car was unconstitutional because the officers had not observed the gray car violate any traffic laws, and he further argued that the vague description of the vehicle and perpetrator from an unreliable informant, coupled with the absence of any observation by the officers of illegal activity, is insufficient to support a reasonable articulable suspicion. Id. at 903. The Court rejected each of these arguments.

The Juvenile TK Court first noted that both innocent and criminal activity could support a reasonable articulable suspicion of criminal activity, and thus, the officers were not required to observe any traffic violation or criminal activity before initiating the investigatory stop. Id. The Court noted that it "focus[ed] [its] analysis on the temporal and geographical proximity of the car to the scene of the crime, the matching description of the vehicle, and the time of the stop." Id. The Court reasoned that the officers had reasonable suspicion to stop the gray car because the gray car was spotted no more than two blocks away from the scene of the robbery within five minutes of dispatch informing the officers of the robbery in the early morning hours when the gray car was the only car observed to be on the road. Id. The Juvenile TK Court based its decision heavily on "the vehicle's temporal and geographical proximity to the crime scenes." Id.

The facts of the Juvenile TK case are substantially similar to the present action, and the reasoning of the Juvenile TK case supports a finding in the present action that Officer Rodgers

9

had sufficient reasonable articulable suspicion that criminal activity was afoot to justify the July 1, 2019, investigatory stop of the Chevy Avalanche.

Officer Rodgers observed the Chevy Avalanche in the exact area the gunfire had been reported and immediately following the report of the gunfire, the persons in the area of the gunfire had been reported getting into a vehicle and leaving the area, the Chevy Avalanche was the <u>sole</u> vehicle Officer Rodgers observed in the area, and the road upon which Officer Rodgers observed the Chevy Avalanche was the only possible route out of the area where the gunfire had so recently just been reported. Thus, the Court finds that the totality of the circumstances, including the extremely short distance between area of the reported gunfire and the location of the stop, the short period of time between the report of gunfire and the stop, and the even shorter period of time between the report that persons were entering a vehicle to leave the area and the stop of the only vehicle observed leaving the area support a finding that Officer Rodgers possessed the necessary reasonable articulable suspicion to justify the July 1, 2019, investigative stop of the Chevy Avalanche.

Therefore, to the extent Defendant Motion to Suppress Search and Seizure, [Docket No. 28], seeks an Order of this Court suppressing all evidence flowing from the July 1, 2019, investigatory stop of the Chevy Avalanche on the basis of Defendant's argument that said stop was at its inception constitutionally impermissible, the undersigned recommends that Defendant's Motion to Suppress Search and Seizure, [Docket No. 28], be **DENIED**.

### C. Seizure of the Ruger Pistol

Defendant also challenges Officer Rodgers' seizure of the Ruger pistol observed on the vehicle console. (Def.'s Mem., [Docket No. 42], at 3, 6–8). In addition to his argument that the initial stop was improper, Defendant argues that the seizure of the Ruger pistol was improper

because it was seized without a warrant and there is no applicable exception to the warrant requirement which would provide for the seizure of the Ruger pistol. (Id.).

Regarding the "plain view exception," Defendant notes only that it "applies only if the initial intrusion did not run afoul of the Fourth Amendment." (Id. at 8). Defendant ostensible argues that because he believes the initial investigatory stop to be improper, the plain view doctrine cannot apply here. (See, Id.). The Court finds this argument to be unpersuasive in the present case precisely because the Court has now concluded above that the July 1, 2019, investigatory stop of the Chevy Avalanche was in fact sufficiently supported by reasonable articulable suspicion on the record now before the Court.

Under the plain view doctrine, a law enforcement officer "may seize, without a warrant, an item that is 1) in plain view 2) when it is observed from a lawful vantage point, where the incriminating character of the item is immediately apparent." United States v. Banks, 514 F.3d 769, 773 (8th Cir. 2008) (footnote omitted) (citing Horton v. California, 496 U.S. 128, 136–38 (1990)); United States v. Armstrong, 554 F.3d 1159, 1162–63 (8th Cir. 2009), cert. denied, 129 S.Ct. 2805 (2009).

As discussed above, Officer Rodgers did not violate the Fourth Amendment when he initiated the July 1, 2019, investigatory stop of the Chevy Avalanche. Consequently, when Officer Rodgers was standing outside the Chevy Avalanche on the side of the road, he was standing at a lawful vantage point because Officer Rodgers had properly stopped the vehicle for an investigatory stop. See, United States v. Gillon, 348 F.3d 755, 759 (8th Cir. 2003) (citing United States v. Beatty, 170 F.3d 811, 814 (8th Cir. 1999)). "Once an officer has lawfully stopped a vehicle, . . . he can approach it even if all the occupants have been removed." United

States v. Vinson, 805 F.3d 1150, 1152 (8th Cir. 2015) (citing United States v. Beatty, 170 F.3d 811, 814 (8th Cir.1999)).

Similarly, the incriminating nature of the Ruger pistol was immediately apparent under the reported gunfire circumstances of the present case. "'Immediately apparent' means that the officers have probable cause to associate the object with criminal activity." United States v. Darr, 661 F.3d 375, 379 (8th Cir. 2011) (citing United States v. Hatten, 68 F.3d 257, 261 (8th Cir. 1995)). "Probable cause does not require absolute certainty it only requires 'that the facts available to a reasonably cautious man would warrant a belief that certain items may be contraband or stolen property or useful as evidence of a crime." United States v. Muhammad, 604 F.3d 1022, 1028 (8th Cir. 2010) (quoting United States v. Green, 560 F.3d 853, 858 (8th Cir. 2009)).

In the present case, Officer Rodgers had probable cause to associate the Ruger pistol with reported criminal activity. Officer Rodgers was on Porcupine Lane in response to a 911 call that gunfire had just been heard at a residence and that the persons in the immediate area from which the gunfire originated had entered a dark truck and were leaving the area. Moreover, the Chevy Avalanche was the sole vehicle Officer Rodgers observed in the area, and the road upon which Officer Rodgers observed the Chevy Avalanche was the only possible route out of the area where the gunfire had just recently been reported. Therefore, Officer Rodgers had probable cause to believe that the Ruger pistol was likely evidence of a crime. This probable cause determination is further bolstered by Officer Rodgers having observed Defendant flee from the Chevy Avalanche after Officer Rodgers had engaged his patrol lights to initiate the stop. See, United States v. Clark, 743 F.2d 1255, 1260 (8th Cir. 1984) (providing that flight from law enforcement officers is a factor which can help establish probable cause). Importantly,

Defendant's filings lack any argument that the incriminating nature of the Ruger pistol was anything other than immediately apparent under the totality of the circumstances of the present case.

It is unrefuted that the Ruger pistol was in plain view. Officer Rodgers testified that he saw the pistol on the console in the area between the driver's seat and the front passenger's seat of the Chevy Avalanche. The record now before the Court lacks any indication that Officer Rodgers entered the vehicle before seeing the Ruger pistol or that Officer Rodgers caused any items to be manipulated inside the vehicle before he was able to see the Ruger pistol.

Because Officer Rodgers observed the Ruger pistol in plain view from a lawful vantage point and because the incriminating nature of the Ruger pistol was immediately apparent here, the plain view doctrine permitted Officer Rodgers to lawfully seize the Ruger pistol from the Chevy Avalanche without a warrant. See, gen., Texas v. Brown, 460 U.S. 730, 740 (1983) ("The seizure of property in plain view involves no invasion of privacy and is presumptively reasonable, assuming that there is probable cause to associate the property with criminal activity.")

Therefore, to the extent Defendant Motion to Suppress Search and Seizure, [Docket No. 28], seeks an Order of this Court suppressing the Ruger pistol, the undersigned recommends that Defendant's Motion to Suppress Search and Seizure, [Docket No. 28], be **DENIED**.

### D.  January 8, 2020, Search Warrant

Defendant's Motion to Suppress Search and Seizure, [Docket No. 28], also seeks an Order of this Court suppressing the DNA sample secured through the execution of the January 8, 2020, search warrant. (Def.'s Mem., [Docket No. 44], at 8–9). Defendant's sole argument in support of this request is that the search warrant should be suppressed as the fruit of the

poisonous tree in that the search warrant was premised on the July 1, 2019, investigatory stop of the Chevy Avalanche which led to Defendant's arrest and the seizure of the Ruger pistol. Defendant here again argues that both the initial stop and the seizure of the pistol were unlawful and if the information obtained from the investigatory stop and the seizure of the Ruger pistol are removed from the affidavit submitted in support of the DNA search warrant application, then the affidavit in support of the application for search warrant lacks probable cause. At the July 6, 2020, Motions Hearing, Defendant's counsel acknowledged that this derivative argument was Defendant's sole argument regarding the January 8, 2020, search warrant. (July 6, 2020, Motions Hearing, Digital Record at 10:15–10:16 a.m.).

The undersigned has, however, already found that the July 1, 2019, investigatory stop of the Chevy Avalanche and the subsequent seizure of the Ruger pistol were both lawful. That discussion need not be repeated here. Suffice it to say that, for the reasons discussed above, the evidence obtained as a result of the execution of the January 8, 2020, search warrant was therefore not the fruit of the poisonous tree because the July 1, 2019, investigatory stop of the Chevy Avalanche and Officer Rodgers' seizure of the Ruger pistol were constitutionally permissible.

Therefore, to the extent Defendant's Motion to Suppress Search and Seizure, [Docket No. 28], seeks an Order of this Court suppressing evidence obtained as a result of the execution of the January 8, 2020, DNA search warrant, the undersigned recommends that Defendant's Motion to Suppress Search and Seizure, [Docket No. 28], be **DENIED**.

### III. Conclusion

Therefore, based on the foregoing and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT** Defendant's Motion to Suppress Search and Seizure, [Docket No. 28], be **DENIED**.

Further, based on Defendant's abandonment of his Motion to Suppress Statements, [Docket No. 29], and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED THAT** Defendant's Motion to Suppress Statements, [Docket No. 29], be termed.

Dated: September 2, 2020                        **s/ Leo I. Brisbois**
                                                                                                                Hon. Leo I. Brisbois
                                                                                                                U.S. MAGISTRATE JUDGE

### N O T I C E

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "A party may file and serve specific written objections to a magistrate judge's proposed findings and recommendation within 14 days after being served with a copy of the recommended disposition[.]"  A party may respond to those objections within 14 days after being served a copy of the objections.  LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).

**Under Advisement Date:** This Report and Recommendation will be considered under advisement 14 days from the date of its filing.  If timely objections are filed, this Report and Recommendation will be considered under advisement from the earlier of: (1) 14 days after the objections are filed; or (2) from the date a timely response is filed.